IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter comes before the Court on the Government's motion to display the tattoos of four defendants standing trial in the first trial grouping ("Trial I") of this sprawling RICO-conspiracy case: Robert B. Ledbetter, Christopher A. Harris, Rashad A. Liston, and Deounte Ussury (Doc. 1100).[1] For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's request.

### I. BACKGROUND

This case centers on an alleged racketeering enterprise known as the "Short North Posse"—a purported criminal street gang that allegedly operated in the Short North area of Columbus, Ohio, from roughly 2005 until 2014. In Count One of the Superseding Indictment, the Government alleges that Defendants Ledbetter, Harris, Liston, and Ussury were members or associates of the Short North Posse. To help prove that these defendants were members or associates of the Short North Posse, the Government seeks to display tattoos that the defendants have on their bodies which the Government contends both: (1) exist; and (2) "are *arguably* gang-related or are otherwise relevant to the issues in Trial One." (*Id.*).

---

[1] The Government does not request to display any tattoos from the fifth defendant, Clifford L. Robinson, presumably because he does not face the racketeering-conspiracy count. (*See* Doc. 1100).

Despite preparing this case since July 2014, and despite considerable pretrial briefing on a host of substantive and procedural issues, including nearly a dozen motions in limine regarding contentious evidentiary issues, the Government did not indicate that it wished to display the defendants' tattoos until the sixth week of trial. (*Id.* ("At the conclusion of trial proceedings on May 9, 2016, counsel for the United States advised the Court that the government wishes to display the tattoos of four defendants . . . before the close of evidence.")). By then, counsel for the defendants had already given their opening statements to the jury and had cross-examined a majority of the Government's witnesses—including the Government's expert witness on gang culture, who testified about gang-related tattoos, and several indicted and unindicted co-conspirators who had purportedly gang-related tattoos on their bodies.

Upon learning of the Government's request, the Court ordered simultaneous briefing from the parties. The Government submitted its motion to display the defendants' tattoos on Monday, May 16, 2016. (*Id.*). Harris (Doc. 1101) and Liston (Doc. 1102) filed memoranda in opposition the same day. Collectively, Harris and Liston argue that evidence of any tattoos they might have would be irrelevant, unfairly prejudicial, a violation of their Fifth Amendment right against self-incrimination, and, in any event, would be admitted too late in the game given those portions of the case already completed. In the interest of judicial efficiency, Ledbetter later moved to join in Harris's memorandum in opposition. (Doc. 1104). Ussury, however, opted not to file any response in opposition and, for strategic reasons, seems to have consented to the display of his tattoos to the jury.[2]

---

[2] At two sidebar conferences on this issue, Ussury's counsel indicated that their client would be willing to display his tattoos to the jury in an attempt to distance himself from the Short North Posse. If that remains Ussury's intent, he may arrange a time and place to have his tattoos photographed by the United States Marshals Service for display during the Government's case-in-chief or Ussury's defense. If, however, Ussury does not consent to having his tattoos displayed, then he will not be required to do so, except as detailed in Parts III.C. and IV of this Opinion and Order, discussed below.

## II.  LEGAL STANDARDS

Under the Federal Rules of Evidence, evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Evidence can be relevant even if it does not relate to an element of a charged offense or to a fact in dispute, provided the evidence supplies background information about the defendant or the offenses. *See* Advisory Committee Notes to 1972 Proposed Rules ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").  The Government thus faces a "low threshold" for establishing that evidence is relevant, *Tennard v. Dretke*, 542 U.S. 274, 285 (2004), and defendants "face[] a significant obstacle in arguing that evidence should be barred because it is not relevant," *United States v. Borow*, 668 F.3d 901, 907 (7th Cir. 2012).  *See generally United States v. Collins*, 799 F.3d 554, 578 (6th Cir. 2015) ("This Circuit applies an 'extremely liberal' standard for relevancy." (citation omitted)).

Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice."  Fed. R. Evid. 403; *United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015).  The term "unfair prejudice" does not, however, encompass "the damage to a defendant's case that results from the legitimate force of the evidence." *United States v. Ford*, 761 F.3d 641, 648 (6th Cir. 2014) (quotation omitted).  After all, most evidence is prejudicial in one way or another.  Instead, the term "unfair prejudice" refers only to evidence which tends to lead jurors to make a decision on an improper basis.  *Id.*

The Fifth Amendment to the United States Constitution provides in part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The right against self-incrimination bars only "compelled incriminating communications . . . that are 'testimonial' in character." *United States v. Hubbell*, 530 U.S. 27, 34 (2000). Put differently, to qualify for protection under the Fifth Amendment, a statement or other communication must be: (1) testimonial; (2) incriminating; and (3) compelled. *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 189 (2004).

Finally, trial courts possess wide discretion to control both "the mode and order of examining witnesses and presenting evidence" so as to "make those procedures effective for determining the truth" and so as to "avoid wasting time." *See* Fed. R. Evid. 611(a). Trial courts, moreover, possess inherent authority to enforce pretrial orders through the exclusion of evidence that does not comply with those orders. *See, e.g.*, *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011) ("The district court has broad traditional powers to manage its docket and to manage the presentation of evidence through designated witnesses in a trial before it."); *United States v. Garza*, 448 F.3d 294, 299 (5th Cir. 2006) ("This Circuit has held that a trial court's decision to exclude evidence as a means of enforcing a pretrial order must not be disturbed absent a clear abuse of discretion."); *White v. United States*, 148 F.3d 787, 792 (7th Cir. 1998) ("[T]he district court was also justified in excluding the evidence because it was not brought to the attention of the court or opposing counsel in a timely manner."); *United States v. McCarthy*, 473 F.2d 300, 304-05 n.3 (2d Cir. 1972) ("If the government had considered the presence of tattoo marks on [defendant's] arms to be critical on the issue of identification, it undoubtedly could have obtained an order, upon timely application, requiring him to submit his arms for inspection.").

### III.  ANALYSIS

As this Court previously ruled in connection with Clifford Robinson's motion in limine regarding evidence of the Short North Posse's alleged subsets, the "Cut Throat Committee" and "Homicide Squad"—evidence of the defendants' association with the Short North Posse is both relevant under Rule 401 and not unfairly prejudicial under Rule 403.  (Doc. 905).  Nevertheless, evidence of such gang affiliation through the compelled production of some of the defendants' tattoos violates the defendants' Fifth Amendment right against self-incrimination and, in any event, runs afoul of the Court's pretrial orders regarding the disclosure of witnesses, exhibits, and the filing of motions in limine.  Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's request to display the defendants' tattoos.

#### A.  The Evidence Is Relevant Under Rule 401.

In this Circuit, "[e]vidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case." *Ford*, 761 F.3d at 648; *see also United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) ("Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue.") (Short North Posse forerunner case). Evidence of gang affiliation is only inadmissible "if there is no connection between the gang evidence and the charged offense."  *Ford*, 761 F.3d at 649-50 (holding that evidence of a gang tattoo was not relevant when the sole charge was being a felon in possession of a firearm); *United States v. Newsom*, 452 F.3d 593, 603-04 (6th Cir. 2006) (same).  As this Court previously ruled, "[t]his case falls under the first category, rendering the evidence in question relevant." (Doc. 905).  Thus, evidence of the defendants' gang-related tattoos, to the extent they exist, passes muster under Rule 401.

## B.  The Evidence Is Not Unfairly Prejudicial Under Rule 403.

Although evidence of gang affiliation often will prove relevant, "[t]rial courts must treat [it] with care since most jurors are likely to look unfavorably upon a defendant's membership in a street gang." *United States v. Tolbert*, 8 F. App'x 372, 378 (6th Cir. 2001).  That "care" includes "balancing the probative value of such evidence against its prejudicial effect." *Id.* at 379.  As the Sixth Circuit has warned, however, "the prejudice to be weighed" in this balancing test "is the *unfair* prejudice caused by admission of the evidence." *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006) (quotation omitted).  As such, "[a]lthough prejudicial to a defendant, evidence of gang affiliation can be sufficiently probative to survive a Rule 403 challenge." *United States v. Williams*, 158 F. App'x 651, 653 (6th Cir. 2005).

Evidence of the defendants' membership in or affiliation with the Short North Posse is probative of the RICO-conspiracy count and the murder-in-aid-of-racketeering counts at issue. *See Ford*, 761 F.3d at 649-50 (rejecting Rule 403 challenge to evidence of gang affiliation, including membership in a "distinct subset" of the charged conspiracy, because that evidence "demonstrates the relationship amongst the co-conspirators"); *United States v. Wilson*, 579 F. App'x 338, 342-43 (6th Cir. 2014) (noting that the existence of "an enterprise engaged in racketeering activity" constitutes an element of murder in aid of racketeering (citation omitted)); *see also United States v. Johnson*, 28 F.3d 1487, 1497 (8th Cir. 1994) ("Specific and circumscribed evidence of gang association may be necessary . . . to show the nature and extent of the defendants' association, which in turn bears on whether they conspired." (brackets and quotations omitted)); *United States v. Garnes*, No. 14-20119, 2015 WL 3574845, at *1 (E.D. Mich. June 5, 2015) (denying motion in limine because evidence of gang affiliation "may be relevant toward showing Defendant's association with the [RICO enterprise].").

Against this backdrop, the defendants must point to a substantial risk of unfair prejudice that might outweigh the evidence's probative value.  Defendants have failed to do so.  Instead, they cite only to *United States v. Newsom*, 452 F.3d 593, 603-04 (6th Cir. 2006), where the Sixth Circuit concluded that the district court committed plain error under Rule 403 in permitting questioning regarding the defendant's tattoos.  *Newsom* is inapposite, however, because there, the defendant was charged solely with being a felon in possession of a firearm.  *Id.* at 597.  Evidence that the defendant had incendiary tattoos, including "a firearm-wielding individual with the associated phrase 'fuck y'all,' a gang reference, and other subjects that indicated he lived a 'thug life'" simply were not relevant to the crime he allegedly committed.  *Id.* at 603 ("The details of Newsom's tattoos were simply not probative regarding the sole issue in this case—whether Newsom possessed the firearm . . . on November 23, 2003.").  Thus, the risk of unfair prejudice easily outweighed the nugatory probative value of the defendant's tattoos.  *Id.*

Here, in contrast (and as explained above), evidence that the defendants have tattoos showing their affiliation with the Short North Posse would be probative of their involvement in the charged racketeering enterprise, which forms an element for over half a dozen counts from the Superseding and Joined Indictments.  Thus, in this case, the risk of unfair prejudice does not substantially outweigh the probative value of the evidence in question.

### C.  Compelling the Evidence Would Violate Defendants' Fifth-Amendment Rights.

Although evidence of the defendants' gang-affiliated tattoos, to the extent it exists, passes muster under Federal Rules of Evidence 401 and 403, compelling that evidence from the defendants through an in-court display of their bodies to the jury or a forced photo session with the United States Marshals Service, as the Government proposes, would violate the Fifth-Amendment protection against self-incrimination, at least in part.

7

<u>1.  Evidence of the Defendants' Gang-Affiliated Tattoos Is Testimonial.</u>

To qualify for protection under the Fifth Amendment, a communication must be "testimonial."  *Hiibel*, 542 U.S. at 189.  Federal cases assessing the display of a defendant's tattoos vis-à-vis his Fifth-Amendment right against self-incrimination hardly provide a model of clarity as to whether tattoos constitute "testimonial" communications.  The Sixth Circuit has not weighed in on this issue, and other courts erroneously conflate *all* evidence of tattoos with evidence of identifying physical characteristics, which receive no Fifth-Amendment protection. *See, e.g.*, *United States v. Toliver*, 387 F. App'x 406, 417-18 (4th Cir. 2010) (affirming admission of gang-related tattoos, which were *not* relevant to identifying the defendant, because "[t]his case . . . is more akin to the physical traits cases"; "Tattoos which are openly visible on the body are physical traits, as are voice, appearance, and handwriting."); *United States v. Nixon*, No. 15-cr-20020, 2015 WL 4430176, at *2 (E.D. Mich. July 20, 2015) (denying defendant's motion to suppress photographs of his gang-affiliated tattoos, which were relevant only to argue that his "tattoos are typical tattoos worn by Vice Lords gang members," because "tattoos, like hair color and height are physical, non-testimonial evidence").

The Second Circuit, however, wisely draws a distinction between cases "where a witness relies on a tattoo to identify a defendant" and cases where the government relies on evidence of a defendant's tattoos "not as an 'identifying physical characteristic[,]' but for the 'content of what [was] written.'"  *United States v. Greer*, 631 F.3d 608, 612-13 (2d Cir. 2011).  In the first category of cases, "the tattoo is a physical feature, no different from a handwriting or blood sample, or a scar."  *Id.* at 612.  Accordingly, in those situations, evidence regarding the identifying tattoo falls outside the scope of the Fifth Amendment.  *Id.* at 612-13; *Slavin v. Artus*, 413 F. App'x 380, 382 (2d Cir. 2011) (same).

In the second category of cases, however—cases in which the government relies on evidence of the defendant's tattoos for the *content* of the communication—"[t]he tattoo [is] testimonial." *Greer*, 631 F.3d at 613 (holding that evidence of a tattoo which "in combination with other evidence, allowed jurors to infer that [defendant] had constructive possession of the ammunition" was testimonial); *Slavin*, 413 F. App'x at 381-82 (holding that evidence of "white supremacist tattoos" which were used "to establish motive and intent" were testimonial because "the state here 'relied on the tattoo[s] not as an identifying physical characteristic[,] but for the content of what [was] written.'" (quoting *Greer*, 631 F.3d at 613)).

In this case, evidence of the defendants' gang-affiliated tattoos, to the extent it even exists, is testimonial in nature. The Government does not contend that any of its witnesses will use the defendants' tattoos to physically identify them as participants in a crime. Thus, this is not a case where the presence of a tattoo stands in for other readily identifiable physical characteristics such as a defendant's height, hair color, voice, or handwriting style. *See Hubbell*, 530 U.S. at 34-35. Instead, the Government hopes to introduce evidence of the defendants' tattoos because "[t]attoos that help to establish gang membership are admissible to support a showing of a joint venture or conspiracy." (*See* Doc. 1100 (quoting *United States v. Suggs*, 374 F.3d 508, 517 (7th Cir. 2004))). That is, the Government intends to rely on the challenged communications to "support[] the charge that [the defendants] conspired to engage in criminal activity." (*Id.*). In the Government's own words, "[e]vidence that these defendants decorated their bodies with tattoos showing their affiliation to the Short North Posse . . . and their loyalty to their co-conspirators goes to the heart of the existence, structure, and operation of the RICO enterprise [charged in Count One of the Superseding Indictment]." (*Id.*). Accordingly, evidence of the tattoos is testimonial. *See Greer*, 631 F.3d at 613

2. Evidence of the Defendants' Gang-Affiliated Tattoos Is Incriminating.

To qualify for protection under the Fifth Amendment, a communication also must be incriminating. *Hiibel*, 542 U.S. at 189. No use belaboring the point here: the Government concedes that evidence of the defendants' gang-affiliated tattoos, to the extent it exists, is incriminating because those tattoos would tend to show the existence of the charged RICO enterprise and the defendants' affiliation with it. Indeed, that is the whole point of this dispute.

3. Evidence of the Defendants' Gang-Affiliated Tattoos Would Be Compelled, in Part.

Finally, to qualify for protection under the Fifth Amendment, a communication must be "compelled" by the government. *Id.* This issue presents a closer call. Indeed, in *Greer*, the Second Circuit held that, although evidence of the defendant's tattoo was testimonial and incriminating, the government nevertheless could elicit testimony describing that tattoo because "[t]he tattoo . . . was not compelled by the government." *Greer*, 631 F.3d at 613. The *Greer* Court held that testimony concerning the defendant's tattoo did not address a "compelled" communication for two reasons: (1) the tattoo was plainly visible on the defendant's arm and "[n]o evidence" suggested that law-enforcement officers "were able to read the tattoo only by applying physical force during [the defendant's] arrest"; and (2) even if physical force *were* required to view the defendant's tattoo, the "voluntary tattooing" of an incriminating word on the defendant's arm was "not the product of government compulsion." *Id.* (analogizing the voluntary tattooing to voluntary preparation of incriminating tax documents that were held to be outside the protection of the Fifth Amendment in *Fisher v. United States*, 425 U.S. 391, 410 (1976)). The Fourth Circuit followed similar reasoning in holding that the Fifth Amendment did not protect against photographs of a defendant's gang-affiliated tattoos. *See Toliver*, 387 F. App'x at 418 (noting that the tattoos were "openly visible on [the defendant's] body").

To be sure, the Court can think of no government compulsion in admitting evidence of tattoos that are "openly visible on [a defendant's] body," *Toliver*, 387 F. App'x at 418, or that can be read without "applying physical force" to the defendant, *Greer*, 631 F.3d at 613. Thus, tattoos on the defendants' faces, necks, hands, and forearms ordinarily would be admissible, even against a Fifth-Amendment challenge. *See Toliver*, 387 F. App'x at 418. Tattoos on the defendants' backs, shoulders, torsos, mid-sections, legs, and feet, however, ordinarily would not be admissible against a Fifth-Amendment challenge, at least under the "openly visible" component of the compelled-communication inquiry. *See id.*

The Court finds, moreover, that the Fifth Amendment bars evidence of any purported tattoos which are not "openly visible" on the defendants' bodies, or that would require the application of "physical force" to display to the jury. Although the Second Circuit correctly reasoned in *Greer* that voluntarily having a tattoo marked on one's body is not *itself* a compelled act, 631 F.3d at 613, the process of sharing that tattoo, which is not otherwise "openly visible," to the Government "nevertheless has communicative aspects of its own, wholly aside from the contents of [the tattoo]," *see Fisher*, 425 U.S. at 410. Put differently, when the Government lacks independent knowledge of the tattoo's "existence and authenticity," requiring a defendant to appear before the jury or for a photograph session "involves testimonial self-incrimination." *See Hubbell*, 530 U.S. at 45 (holding that, where it is not a "foregone conclusion" that incriminating documents exist and are authentic, requiring a defendant to provide those documents by way of a subpoena involves testimonial self-incrimination); *United States v. Doe*, 465 U.S. 605, 614 n.13 (1984) (same—requiring a defendant to produce documents to the government involves a "tacit[] admission" that they exist and are authentic, which is "sufficient to establish a valid claim of the privilege against self-incrimination").

11

Accordingly, where, as here, the existence and authenticity of a defendant's incriminating, communicative tattoos is not a "foregone conclusion," the Government cannot compel that defendant to appear for an inspection to learn, in the first instance, of their existence and authenticity.  *See Hubbell*, 530 U.S. at 45; *Doe*, 465 U.S. at 614 n.13.  Any other rule would compel the defendant to "tacitly admit" the existence and authenticity of his own self-incriminating tattoos and relieve the Government of its burden for authentication.  *See Doe*, 465 U.S. at 614 n.13.  The Fifth Amendment protects against these twin harms.  *Id.*[3]

All told, the Government may introduce evidence of the defendants' incriminating, communicative tattoos *if* those tattoos are plainly visible on the defendants' bodies, as described above.  The Court agrees with the Government's proposal, in light of safety concerns and other logistical matters, to have the defendants made available for photographs by a law enforcement agent in the presence of the United States Marshals Service.  Those photographs may then be introduced during the Government's case-in-chief.

### IV.  The Evidence Does Not Comply With the Court's Pre-Trial Orders.

Putting the Fifth Amendment aside, there is another, independent reason for excluding evidence of the defendants' non-openly visible tattoos: the Government could have, and should have, brought this matter to the defendants' attention and the *Court's* attention much sooner.  Throughout this case, the Court has worked assiduously to develop a trial schedule that accommodates the interests of all parties.  That trial schedule included pre-trial dates for the disclosure of witnesses, exhibits, and the filing of any motions in limine.

---

[3] The Government appears to have independent knowledge of the existence and authenticity of tattoos on the chest of Defendant Robert B. Ledbetter.  Earlier in this trial, the Government introduced a photograph of Ledbetter without his shirt on, and his chest appeared to contain several potentially gang-related tattoos.  Since the Court already admitted that photograph into evidence, the Government may continue to rely on it to show the existence of the alleged RICO enterprise and Ledbetter's affiliation with it or its members.  No further photographs of Ledbetter's non-plainly visible tattoos seems warranted.

The Government did not disclose its intent to compel an in-court display of the defendants' tattoos, or photographs of those tattoos, in connection with any of these pre-trial deadlines.  As such, the defendants and the Court were required to address this issue on an expedited basis, in the midst of a lengthy and complex trial.  This could have been avoided with timely notice from the Government, and absent that notice, excluding evidence of the defendants' non-openly visible tattoos seems like an appropriate method of enforcing the Court's pretrial orders.  *See Garza*, 448 F.3d at 299; *White*, 148 F.3d at 792.

### IV.  CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's motion to display the defendants' tattoos to the jury during Trial I (Doc. 1100) and **GRANTS IN PART** and **DENIES IN PART** the defendants' corresponding motions in limine or memoranda in opposition (Docs. 1101, 1102, and 1104).  Defendants Ledbetter, Harris, Liston, and Ussury must submit themselves for inspection and photographs of any plainly visible gang-affiliated tattoos under the supervision of the United States Marshals Service before conclusion of the Government's case-in-chief.  The defendants may, of course, have one of their attorneys present for this inspection and photography should they so choose.

**IT IS SO ORDERED.**

                                    <u>  s/ Algenon L. Marbley          </u>
                                    **ALGENON L. MARBLEY**
                                    **UNITED STATES DISTRICT JUDGE**

**DATED:  May 23, 2016**