# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

UNITED STATES OF AMERICA,

        Plaintiff,   :

                              Case Nos. 2:14-cr-127, 2:15-cr-80
                              Civil Case Nos. 2:20-cv-5733, 2:21-cv-1120

                              Chief Judge[1] Algenon L. Marbley
                              Magistrate Judge Michael R. Merz

   - vs -

ROBERT D. LEDBETTER,

        Defendant.   :

## REPORT AND RECOMMENDATION

      This *pro se* proceeding under 28 U.S.C. § 2255 is before the Court on Defendant's original Motion to Vacate (ECF No. 1681).

      Ledbetter was indicted June 24, 2014 (Indictment, ECF No. 14) and convicted by a jury June 19, 2016 (Verdict, ECF No. 1141). He appealed to the Sixth Circuit Court of Appeals which affirmed in a published opinion, *United States v. Ledbetter*, 929 F.3d 338 (6th Cir. Jul. 3, 2019), *cert. denied*, Nov. 12, 2019 (ECF No. 1758).

      Ledbetter filed his original § 2255 Motion by depositing it in the prison mail system October 23, 2020 (ECF No. 1681, PageID 19804). Magistrate Judge Deavers ordered the United States to file an answer within forty-five days of Ledbetter's compliance with her order that he file

---

[1] Algenon L. Marbley currently serves this Court as its Chief Judge. He is referred to throughout this Report as "Judge," the title he bore during the trial.

1

a waiver of attorney-client communication privilege (ECF No. 1690). She then ordered Ledbetter to show cause why his case should not be dismissed for want of prosecution for failure to file to the waiver and he then filed what he styled as his second waiver (ECF No. 1693, 1697). The United States filed its Response March 12, 2021 (ECF No. 1707).

**Supplements and Amendments**

In the meantime, Ledbetter filed on February 25, 2021, by depositing in the prison mail system on that date, a Supplement and Amendment to his § 2255 Motion (ECF No. 1709) which includes as an attachment a copy of ECF No. 1213. On May 3, 2021, Ledbetter filed by mailing his Response to the Government's Response (ECF No. 1723).

On June 19, 2021, Ledbetter avers he "placed in the mail" a Motion to Dismiss a Void Judgment for Lack of Subject Matter Jurisdiction (ECF No. 1733). The United States responded within the time extended by Magistrate Judge Deavers (ECF No. 1741). Ledbetter responded with a Motion to Amend his Motion to Dismiss (ECF No. 1742) and then a month later another Motion to Supplement (ECF No. 1744). On January 24, 2022, Ledbetter filed another Amendment/Supplement (ECF No. 1755).

The United States responded to some of the amendments on February 10, 2022 (ECF No. 1760). Ledbetter replied March 9, 2022 (ECF No. 1763). The Magistrate Judge denied the motions to amend or supplement on March 14, 2022, holding that all the proposed amendments are barred by the one-year statute of limitations adopted by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"(ECF No. 1766)).

2

Ledbetter has not objected to that decision, the time for objection has passed, and the order is now the law of the case.

Having eventually acquiesced in the Court's insistence that he must sign his Motion to Vacate, Ledbetter has taken the position that the signature is "jurisdictional" and everything the Court did before he signed was done without jurisdiction. The undersigned has twice recommended rejection of that position (ECF Nos. 1778, 1795) and the matter remains pending for the Chief Judge's consideration.

**The Principal Motion to Vacate**

In his original Motion to Vacate, Ledbetter pleads the following claims for relief:

**Claim One:** Prejudicial Joinder

**Claim Two:** The RICO Statute is void for Vagueness

**Claim Three:** Insufficient Evidence to Convict on the Elements of "Enterprise" and "Pattern of racketeering activity."

**Claim Four:** Ineffective Assistance of Trial Counsel in that

1. Counsel failed to object to the introduction of impermissible prejudice <u>evidence</u>;

2. Counsel badgered a police witness so bad that he lost credibility to the jury;

3. Counsel reopened the proverbial door during cross-examination on damaging testimony from a cooperating witness, after the court had previously stricken it and issued a curative instruction.

**Claim Five:** The Trial Court Abused its Discretion in Denying a Mistrial.

>**Claim Six:** Multiple Sentences in Violation of the Double Jeopardy Clause
>
>**Claim Seven:** Ineffective Assistance of Trial counsel and Ineffective Assistance of Appellate Counsel for Not Challenging the Indictment as Multiplicitious [sic].
>
>**Claim Eight:** Ineffective Assistance of Trial Counsel for Failure to Challenge Obviously Deficient Reasonable Doubt Instructions

(Motion to Vacate, ECF No. 1681).

The United States has responded to Ledbetter's Motion to Vacate ("Response," ECF No. 1707). Ledbetter filed his Response to the Government's position (Reply) on May 13, 2021 (ECF No. 1723). This Report will consider Ledbetter's claims on an issue-by-issue basis.

**Claim One: Prejudicial Joinder**

In his First Ground for Relief, Ledbetter claims he suffered from prejudicial joinder at trial of the charges against him with those of others of his co-defendants. The United States responds that this claim either was or could have been decided on direct appeal and therefore it is not proper for a motion to vacate. Ledbetter does not reply to that point.

Persons convicted of federal crimes have a right to appeal directly to the appropriate circuit court of appeals and to seek review in the United States Supreme Court. Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent. Yackle, POSTCONVICTION REMEDIES, §108 (1981). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice

or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th, §41.7(e)(2011), *citing Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*, citing Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

The opinion of the Sixth Circuit on appeal in this case shows that the issue of severance could have been raised and litigated on appeal because two of Ledbetter's co-appellants, Ussury and Robinson, did raise the issue as the first assignment of error and obtained a decision on the merits. *Ledbetter, supra*, 345-47.

When a defendant could have raised an issue on direct appeal and did not do so, he has procedurally defaulted the claim unless he can show excusing cause and prejudice. The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). The procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456

U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993). When failure to raise an issue on direct appeal amounts to ineffective assistance of appellate counsel, that can excuse the procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). That argument is not availing here because counsel for appellants Ussury and Robinson did raise the claim and the Sixth Circuit found it to be without merit.

Ledbetter's First Claim for Relief is procedurally defaulted and should be dismissed with prejudice on that basis.

**Claim Two: The RICO Statute is Void for Vagueness**

In his Second Claim for Relief, Ledbetter asserts the RICO statute is void for vagueness. This claim is also procedurally defaulted by failure to raise it on direct appeal and should be dismissed with prejudice on that basis.

**Claim Three: Insufficient Evidence to Convict on the Elements of "Enterprise" and "Pattern of racketeering activity."**

In his Third Claim for Relief, Ledbetter asserts he was convicted on insufficient evidence to prove the elements of "enterprise" and "pattern of racketeering activity."

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). *A fortioiri*, this same test applies to evaluating the quantum of evidence under the Due Process Clause of the Fifth Amendment which applies to federal criminal prosecutions.

A sufficiency of the evidence claim can be adjudicated on direct appeal because it is the evidence from trial which is bring evaluated. In fact, Ledbetter did submit his sufficiency of the evidence claim on appeal and it was decided against him:

### D. Ledbetter's Sufficiency Claims

Ledbetter argues that there was insufficient evidence to convict him on any of the nine counts on which he was found guilty. In reviewing such a claim, we determine whether, after "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quotation marks omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This is a "very heavy burden" on a defendant, *Callahan*, 801 F.3d at 616, and Ledbetter has not carried it.

**1. RICO Conspiracy**
Ledbetter was convicted of RICO conspiracy, 18 U.S.C. § 1962(d), for his membership in the Short North Posse. Section 1962(d) makes it unlawful to conspire to associate with and participate in the conduct of an enterprise through a pattern of racketeering. *See § 1962(c)*. Ledbetter concedes that the Short North Posse was a racketeering enterprise, as defined by § 1961, but contends that there

7

was insufficient evidence that he agreed to participate in any RICO conspiracy. To establish a conspiracy to violate federal law, the Government need not "prove a formal agreement [to conspire], because a tacit or mutual understanding among the parties is sufficient to show a conspiratorial agreement." See *United States v. Gardiner*, 463 F.3d 445, 457 (6th Cir. 2006) (quoting *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985)). Here, there was substantial evidence from which a rational jury could infer that Ledbetter conspired with his codefendants to engage in racketeering activity in association with the Short North Posse:

• Ledbetter had "Short North" tattooed on his chest;
• Ledbetter was a major supplier of drugs for others to sell in the Short North;
• Ledbetter regularly recruited other members and associates of the Short North Posse to commit murders and robberies;
• Ledbetter directed other Short North Posse associates to engage in criminal activity on his behalf, while he remained on the periphery;
• Ledbetter shared in the profits of the Short North Posse's criminal enterprise, and also shared the bounty with members who committed acts on behalf of the enterprise; and
• Ledbetter directed retaliation for acts of violence against Short North Posse members and for anyone who put the enterprise at risk by bragging or snitching.

In the face of this evidence, Ledbetter argues that he was never tied to minor street crimes of the kind that his codefendants committed, like one-off muggings and beatings. Even assuming that is true, it takes no account of all of the evidence linking Ledbetter to far more serious crimes on behalf of the Short North Posse. Indeed, that Ledbetter did not participate in so-called minor crimes is consistent with the Government's theory that Ledbetter was the head of the Short North Posse. Making all inferences in favor of the Government, a rational juror could find that Ledbetter formed a tacit RICO conspiracy to associate with and participate in the Short North Posse's affairs through a pattern of racketeering.

*Ledbetter, supra*, at 351.

In short, the issue of the sufficiency of the evidence is *res judicata* – already decided by a superior court in this very case. § 2555 does not give Ledbetter a second opportunity to litigate this question. Claim Three should be dismissed with prejudice.

**Claim Four: Ineffective Assistance of Trial Counsel**

    **Claim Four:** Ineffective Assistance of Trial Counsel in that

    1. Counsel failed to object to the introduction of impermissible prejudice <u>evidence</u>;

    2. Counsel badgered a police witness so bad that he lost credibility to the jury;

    3. Counsel reopened the proverbial door during cross-examination on damaging testimony from a cooperating witness, after the court had previously stricken it and issued a curative instruction.

Ledbetter correctly points out that federal appellate courts prefer issues of ineffective assistance of counsel to be decided in the first instance in § 2255 proceedings. He attributes that preference to what he calls the Ledbetter Proposition (See Reply, ECF No. 1723, PageID 19949). However, when the case was actually pending on direct appeal. he urged the Sixth Circuit to decide his ineffective assistance of trial counsel claims in that proceeding. The court decided otherwise:

> **I. Ineffective Assistance of Counsel**
> Ledbetter alone maintains that his counsel was constitutionally ineffective, but generally "a defendant may not raise ineffective assistance of counsel claims on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *See United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005). Ledbetter insists that because this was a "massive, months['] long, complicated trial with over 100 witnesses and an enormous record," the record must be adequate to assess the merits of his claim. But a long and complicated trial record cuts the other way entirely. Thus, we

> decline to hear Ledbetter's claim of ineffective assistance of counsel on this direct appeal.

929 F. 3d at 364. But Judge Rogers was not announcing a new policy, but enforcing an existing one. In the cited case of *United States v. Martinez*, 430 F. 3d 317 (6th Cir. 2005), the court referred to an existing policy of deferring ineffective assistance of counsel claims to § 2255 proceedings and cited Supreme Court precedent to that effect from two years earlier, *Massaro v. United States*, 538 U.S. 500 (2003).

Ledbetter makes an immediate leap from the notion that ineffective assistance claims are to be presented in § 2255 proceedings to his asserted entitlement to an evidentiary hearing in these proceedings. That conclusion does not follow. Rule 8(a) of the Rules Governing § 2255 Proceedings provides

> **(a) Determining Whether to Hold a Hearing.** If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

To determine whether an evidentiary hearing is warranted, the Court must employ a functional analysis. The function of an evidentiary hearing is to permit parties to present admissible evidence from which the Court can decide questions of fact. The Court can then apply appropriate law to those findings of fact to reach conclusions of law.

The Magistrate Judge concludes an evidentiary hearing is not warranted in this case. First of all, Ledbetter himself represented to the Sixth Circuit that the record on his ineffective assistance of trial counsel claims was sufficient for the circuit court to decide those issues and the same record that was available on direct appeal is available to this Court.

The governing standard for ineffective assistance of trial counsel was adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally*

Annotation, 26 ALR Fed 218.

Ledbetter makes three sub-claims of ineffective assistance of trial counsel which are analyzed as follows:

**1. "Counsel failed to object to the introduction of impermissible prejudice evidence"**

Ledbetter here refers to Government Ex. 1-1-112. This was a photograph taken of the Defendant[2] with his cousin Rico Maye, another cousin Keith Maye, and Defendant's brother Elijah Ledbetter around the time Ledbetter was released from prison in 2003 (Trial Transcript, ECF No. 1118, PageID 9802-05). From the sidebar conference transcribed at this transcript location, it is clear defense counsel made a relevance objection because the photograph was outside the time the RICO conspiracy was alleged to have existed. Judge Marbley overruled that objection. Counsel also objected that the prejudicial effect of the photograph outweighed its probative value, which Judge Marbley also overruled. Counsel said he should have made the objection earlier, but Judge Marbley ruling was that the objection was without merit, not that it was late. Judge Marbley also ruled that the admission, if in error, was harmless.

If it was error to admit this photograph, that error by the trial court could have been raised on direct appeal, but was not and the claim is therefore procedurally defaulted. In any event, the admission was not the result of any deficient performance by trial counsel.

**2. Counsel badgered a police witness so bad that he lost credibility to the jury.**

---

[2] Ledbetter is referred to at this and other points in the transcript as "Brandon."

12

The reference here is to cross-examination of Newark, Ohio, Police Officer William Eberts transcribed at ECF No. 1079, PageID 7283, *et seq*. The portion of the cross-examination that Ledbetter characterizes as badgering the witness begins on PageID 7297 and continues to PageID 7303. Only one objection is made to the cross and that was overruled by Judge Marbley. Each of the questions which Ledbetter characterizes as overly aggressive in fact elicited an admission from Officer Eberts that he could not be more precise in his testimony. On re-cross defense counsel attempted to limit Officer Eberts to answering yes or no to a question and Judge Marbley sustained an objection. After lunch recess Mr. Berndt apologized for this.

Ledbetter seems to take Berndt's apology as a confession of ineffective assistance, but it is not. During the course of a two-month multi-defendant criminal trial with high stakes, it would be unusual if no attorney became somewhat aggressive. Any judge with substantial trial experience will have seen numerous instances of lawyers attempting to narrow a witness's answers and "just answer yes or no" is one of the most common. It does not amount to deficient performance. As to prejudice, we simply do not know that any juror found it offensive. Whether jurors expect cross-examination to be more or less aggressive is a subject of speculation even in general and we have no reports of specific jury concern or reaction to this questioning.

Defense counsel's aggressive cross-examination of a State's witness is in no way analogous to the open-court hostility to his client of defense counsel in *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997). Hostility to one's own client telegraphs a conflict of interest; hostility to an opposing witness telegraphs identification with one's own client and zealous advocacy.

**3. Counsel reopened the proverbial door during cross-examination on damaging testimony from a cooperating witness, after the court had previously stricken it and issued a curative instruction.**
#

13

\#        The third instance of allegedly ineffective assistance by defense counsel Berndt begins at PageID 11024 of Trial Tr. ECF No. 1123.  Cooperating witness Williams has just testified that Ledbetter paid his attorney fee on a prior murder case and did so while he was wearing a bulletproof vest.  At sidebar, Berndt advised the Court that he had stipulated to the payment, but kept the vest out of the stipulation.  Berndt also asserts Williams did not have personal knowledge of the vest, so Berndt would be obliged to call Williams' lawyer Collins as a defense witness to get that admission on the record.  *Id.* at PageID 11025.  Later in the trial on May 25, 2016, when Judge Marbley is making his oral ruling on the motion for mistrial, he reminds the jury:

> After I took these efforts to strike the relevant testimony, to explain to the jury why such a visit from Mr. Berndt to Mr. Williams would be commonplace, and to instruct the jury that they may not draw any negative inferences from what they heard, Mr. Berndt made the strategic decision to revisit his in-prison visit to Mr. Williams on cross-examination.

(Tr. Tr. ECF No. 1125, PageID 11458).  He goes on to hold that reiteration of the information[3] is not sufficiently prejudicial as to affect the outcome and support a mistrial. *Id.*

Taken together, Ledbetter's three asserted deficiencies of performance fail to satisfy the first prong of *Strickland*.  Attorney Berndt objected to admission of the group photograph from 2003, but Judge Marbley overruled the relevance objection.  Although Berndt apologized for the aggressive questioning of Eberts, it elicited clarifying restrictions on the general testimony he had given.  And Judge Marbley himself characterized reiteration of the testimony about Berndt's visiting cooperating witness Williams in jail as a strategic decision by Berndt.

All the evidence adverted to of the asserted instances of ineffective assistance of trial counsel is already in the record; there is no evidence presently outside the record which warrants

---

[3] Which occurs at ECF No. 1123, PageID 11155.

an evidentiary hearing. This is contrasted to a case where, by hypothesis, a defendant claims he told his lawyer about three impeccable alibi witnesses who were then not called to testify. There an evidentiary hearing would be needed to get their testimony before the Court.

Ledbetter's Fourth Claim for Relief should be denied.

**Ground Five: The Trial Court Abused its Discretion in Denying a Mistrial.**

In his Fifth Ground for Relief, Ledbetter claims he was denied due process when Judge Marbley refused to declare a mistrial. Ledbetter argues State's witnesses Williams and Jones "implied in their testimony that Mr. Ledbetter's defense counsel was involved in the conspiracy or somehow influenced events that led to Crystal Fyffe's murder." (ECF No. 1681, PageID 19790). Ledbetter admits Judge Marbley gave curative instructions, but asserts this was not enough to cure the prejudice and a mistrial should have been declared. *Id.*

This claim is barred by *res judicata* as it was raised and decided adversely to Ledbetter on direct appeal. Ledbetter had moved for a mistrial related to these witness statements. Judge Marbley denied that motion but issued curative instructions. Ledbetter complained of this decision on appeal, but the Sixth Circuit held: "Although these statements were inappropriate, the court reasonably determined that a mistrial was not necessary and instead issued appropriate curative instructions." *Ledbetter*, 929 F.3d at 362.

Because the issue of whether Judge Marbley abused his discretion in denying a mistrial has already been decided in this case by a superior court, it is *res judicata*. § 2255 does not provide Ledbetter with an opportunity to relitigate the issue. Ground Five should therefore be dismissed with prejudice.

**Ground Six: Multiple Sentences in Violation of the Double Jeopardy Clause**

In his Sixth Ground for Relief, Ledbetter claims he has been sentenced multiple times for the same conduct in violation of the Double Jeopardy Clause, to wit the murders of victims Williams, Brumfield, and Fyffe (Motion, ECF No. 1681, PageID 19796.)

This claim is also barred by *res judicata*. Ledbetter raised it on direct appeal and the Sixth Circuit decided it as follows:

> Ledbetter also challenges his sentence. First, he argues that he was convicted of multiple crimes and sentenced to multiple punishments for the same conduct, in violation of the Double Jeopardy Clause. Ledbetter was convicted of multiple crimes for each of the three murders he committed.[2] But he concedes that "applying the *Blockburger* test, these various counts do have elements not contained in the other." Thus, under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), these offenses are different and Ledbetter can be punished for all of them without offending the Double Jeopardy Clause.
>
> Ledbetter tries to wriggle out from under *Blockburger* with the help of *Rashad v. Burt*, in which this court acknowledged that the *Blockburger* test is not applicable to successive prosecutions. 108 F.3d 677, 679 (6th Cir. 1997). But *Rashad* specifically relied upon the distinction between successive prosecutions for conduct that may constitute the same "act or transaction" and cases (like Ledbetter's) not involving successive prosecutions where the concern is "multiple charges under separate statutes," *id.* at 679, and where *Blockburger* applies. The holding of *Rashad*, moreover, has repeatedly been limited by this court to the particular facts of that case. *See United States v. Farah*, 766 F.3d 599, 607 (6th Cir. 2014); *Murr v. United States*, 200 F.3d 895, 901 (6th Cir. 2000); *United States v. Forman*, 180 F.3d 766, 769–70 (6th Cir. 1999).

929 F. 3d at 366.

Ledbetter's Sixth Ground for Relief should be dismissed with prejudice on the basis of *res judicata*.

**Ground Seven: Ineffective Assistance of Trial Counsel and Ineffective Assistance of Appellate Counsel for Failure to Challenge the Indictment as Multiplicitious [sic]**

In Ground Seven, Ledbetter recasts his Double Jeopardy claim as an ineffective assistance claim at both the trial and appellate levels. This argument reflects a misunderstanding of the ban on duplicitous indictments. A duplicitous indictment is one which charges two or more offenses in the same count of an indictment. When that happens, a defendant does not have fair notice under the Fifth Amendment and a general verdict of guilty without a specific unanimity instruction as to the alternative charges can indeed violate the Double Jeopardy Clause.

Ledbetter argues this claim in terms of Double Jeopardy precedent, but his Double Jeopardy claim was rejected by the Sixth Circuit on the merits. He does not point to any count of the Indictments which was in fact multiplicitous. Obviously it cannot constitute ineffective assistance of trial counsel or ineffective assistance of appellate counsel to fail to raise an objection which has no merit. Ledbetter's Seventh Ground for Relief should be dismissed with prejudice.

**Claim Eight: Ineffective Assistance of Trial Counsel for Failure to Challenge Obviously Deficient Reasonable Doubt Instructions**

In his Eighth Ground for Relief, Ledbetter claims he received ineffective assistance of trial counsel when his trial attorney did not challenge "obviously deficient" reasonable doubt instructions. In the text of his Motion to Vacate, however, Ledbetter makes no record reference to any reasonable doubt instructions, but rather to the form of the verdict. The Government's Response challenges Ledbetter for his failure to identify what instruction he believed is "obviously

17

deficient" (Response, ECF No. 1707, PageID 19902). Ledbetter does not correct that lack of identification in his Reply; he does not mention the jury instructions issue at all. Ground Eight should be dismissed for failure to state a claim upon which relief can be granted.

**Evidentiary Hearing on Disciplinary Complaint**

In his Reply, Ledbetter reports that on September 15, 2020, he filed a complaint against Attorney Timothy McKenna with the Disciplinary Counsel for the Supreme Court of Ohio complaining of allegedly unprofessional conduct by Mr. McKenna which adversely affected Ledbetter's direct appeal to the Sixth Circuit (ECF No. 1723, PageID 19953). Because he received no hearing on that Complaint, he argues this Court should conduct a "mix" hearing on both.

Although this Court has jurisdiction to hear claims of ineffective assistance of appellate counsel in § 2255 proceedings arising from cases tried here, we have no jurisdiction at all to conduct professional misconduct hearings in cases brought before the Ohio Supreme Court.

**Conclusion**

The Magistrate Judge respectfully recommends Ledbetter's § 2255 Motion to Vacate be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

August 8, 2022.

s/ *Michael R. Merz*<br>
United States Magistrate Judge